### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDWARD ABBOTT, | : | |
| Petitioner, | : | Civil No. 04-6370 (RBK) |
| | : | |
| v. | : | |
| | : | |
| BUREAU OF PRISONS, | | **MEMORANDUM OPINION AND** |
| Respondent. | : | **ORDER** |
| | : | |

This matter comes before the Court upon an application titled by Petitioner "Rule 60(B) and the Fairness in Cocaine Sentencing Act," see Docket Entry No. 10, and it appearing that:

1.  On December 20, 2004, the Clerk received transfer papers of Petitioner's § 2241 petition and accompanying docket from the United States District Court for the Northern District of Florida. See Docket Entry No. 7 (encompassing prior Docket Entries Nos. 1 to 6).

2.  In his § 2241 petition, Petitioner challenged Respondent's model of calculation of good conduct credits. See id., see also Docket Entry No. 8, at 2 (detailing Petitioner's challenges). Specifically, Petitioner focused on Respondent's construction of 18 U.S.C. § 3624(b). See id.

3.  On March 11, 2005, this Court issued an order and accompanying opinion denying the petition. See Docket Entries Nos. 8 and 9. In its opinion, the Court detailed to Petitioner the reasons for denial of Petitioner's challenges. See Docket Entry No. 8, at 3-5, 7-11.

4.  Consequently, this matter was terminated on March 11, 2005. On February 8, 2010, that is, almost five years after the termination of this matter, the Clerk received Petitioner's

instant application titled "Rule 60(B) and the Fairness in Cocaine Sentencing Act." See Docket Entry No. 10. The application, a thirteen-page document, largely replicates Petitioner's original § 2241 petition, challenging, once again, Respondent's construction of § 3624(b). See id. at 1-2, and 5. In addition, Petitioner asserts that this Court's decision dismissing his prior § 2241 petition (i.e., the decision rendered in 2005) was made in order for the Court to gain employment promotion, for itself and for unspecified United States Attorney, and also in order to ensure increase of value for the publically traded shares of Respondent. See id. at 3. Petitioner continues by asserting that Respondent does not provide sufficient health care (to unspecified inmates, that might or might not include Petitioner), and the diet provided by Respondent caused malnutrition (also to unspecified inmates, that might or might not include Petitioner). Petitioner concludes by stating that, in light of "the Fairness in Cocaine Sentencing Act, which is before the Senate at the present time, Petitioner qualifies for immediate release." Id. at 7 and 11 (offering, in addition to that statement, Petitioner's assurances that the Fairness in Cocaine Sentencing Act would necessarily be enacted into law but not detailing how such enactment, if it takes place, would affect Petitioner's term of imprisonment).

5.   To the degree Petitioner wishes to make a Rule 60(b) motion, this motion must be denied. Federal Rule of Civil Procedure 60(b) provides that the Court may, in its discretion, provide relief from a final judgment for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under rule 59(b); (c) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or

misconduct by an opposing party; (d) the judgment is void; (e) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is not longer equitable; or (f) any other reason that justifies relief, A motion under Rule 60(b) must be made within a reasonable time -- and for reasons (a), (b), and (c) no more than a year after the entry of the judgment or order or the date of the proceeding. See Fed. R. Civ. Pro. 60(c). None of the criteria set forth in Rule 60(b) are present here. Nor has Petitioner filed this motion within a reasonable time, and he certainly did not file it within a year after the Court's March 11, 2005 decision. Accordingly, his Rule 60(b) motion must be denied.

6.      To the degree Petitioner wishes to re-raise the challenges already addressed and dismissed by this Court in 2005, the application at hand presents abuse of writ. The Court of Appeals clarified the workings of the doctrine of abuse of writ as follows:

> When a prisoner files multiple petitions [seeking] relief [in the form of a writ], the abuse of the writ doctrine as set forth in 28 U.S.C. § 2244(a) may bar his claims: No circuit or district judge shall be required to entertain an application for [another writ] to inquire into the detention of a person . . . if it appears that the [same issue was resolved] by a judge or court of the United States on a prior application for a writ of habeas corpus . . . .

Furnari v. United States Parole Comm'n, 531 F.3d 241, 2008 U.S. App. LEXIS 14512, at *6-8 (3d Cir. July 9, 2008) (relying on Sanders v. United States, 373 U.S. 1, 9 (1963)). "The Court in Sanders explained that a court may grant controlling weight to a denial of a prior application for [a writ] when three criteria are met: ([a]) the same ground presented in the successive application was determined adversely to the applicant on the previous application; ([b]) the previous determination was made on the merits; and ([c]) 'the ends

Page 3 of 15

of justice' would not be served by reaching the merits of the subsequent application." <u>Id.</u>
at 21 (citing <u>Sanders</u> 373 U.S. at 11). Therefore, such repeated challenges will be
dismissed on the grounds already articulated by this Court in Docket Entry No. 8. In
addition, the Court strongly cautions Petitioner against future filing of pleadings raising
already dismissed claims, since Petitioner's persistence at that endeavor could earn
Petitioner an abuse-of-writ bar and other sanctions, if appropriate.

7.   To the degree Petitioner wishes to raise challenges under the Fairness in Cocaine
Sentencing Act, that is, a proposed bill H.R. 3245, which -- thus far -- has been referred
to the House Judiciary Subcommittee on Crime, Terrorism, and Homeland Security, and
which had no activity reported upon since July 29, 2009, Petitioner's challenges must be
dismissed, since Petitioner's reliance on a non-enacted provision presents, by definition, a
speculative claim. Section 2241 of Title 28 of the United States Code provides, in
relevant part, that "[t]he writ of habeas corpus shall not extend to a prisoner unless . . .
[h]e is in custody in violation of the Constitution or laws or treaties of the United States,"
28 U.S.C. § 2241(c) (3), and does not confer upon this Court jurisdiction to grant a writ
for violation of the Constitution or laws "that Petitioner believes would or should be
enacted." Consequently, this challenges will be dismissed for failure to state a cognizable
federal claim and without examination of the apparent impossibility of administrative
exhaustion of such hypothetical challenges.

8.   Moreover, even if Petitioner wished to attack Respondent's calculation of his prison term
on the grounds *other than those dismissed by this Court in 2005 and other than those
based on the Fairness in Cocaine Sentencing Act*, Petitioner would have to do so in an

action *other* than this matter, i.e., by initiating a new and separate § 2241 proceedings. The rationale of this requirement is two-fold.

a.      At the outset, Petitioner has to administratively exhaust these different challenges. Respondent's Administrative Remedy Program is a three-tier process available to inmates confined in institutions operated by respondent who "seek formal review of an issue relating to any aspect of his/her confinement." 28 C.F.R. § 542.10(a). An inmate must generally attempt to informally resolve the issue by presenting it to staff in a BP-8 form. See 28 C.F.R. § 542.13. If the issue is not informally resolved, then the inmate may submit a request for administrative remedy (BP-9) to the Warden. See 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response may appeal to the Regional Director (BP-10), and an inmate dissatisfied with the Regional Director's decision may appeal to the General Counsel in the Central Office (BP-11). See 28 C.F.R. § 542.15(a). Appeal to the General Counsel is the final administrative appeal. See id. The regulations further provide that the Warden shall respond within 20 calendar days; the Regional Director shall respond within 30 calendar days; and the General Counsel shall respond within 40 calendar days. See 28 C.F.R. § 542.18. And the regulation provides that if the inmate does not receive a response within the time allotted for reply, then the inmate may consider the absence of a response to be a denial at that level. See id. A § 2241 petition is deemed unexhausted unless the inmate did not have his application either expressly or constructively denied by the General Counsel. Although 28 U.S.C. § 2241 contains no exhaustion

requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998); see also, Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981). The United States Court of Appeals for the Third Circuit requires administrative exhaustion of a claim raised under § 2241 for three reasons: "([i]) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; ([ii]) permitting agencies to grant the relief requested conserves judicial resources; and ([iii]) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Federal Bureau of Prisons, 98 F. 3d 757, 761-62 (3d Cir. 1996); see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988). Since, here, Petitioner's challenges other than those dismissed by this Court in 2005 (that is, if such challenges were intended) are so poorly fleshed out that the Court cannot discern them from the face of the instant application. Therefore, with respect to these hypothetically-possible challenges, the process of administrative exhaustion appears nothing short of indispensable. Consequently, if Petitioner administratively exhausts (or already exhausted) his non-speculative claims other than those dismissed by this Court in 2005 and other than those based on the Fairness in Cocaine Sentencing Act, the decision of Respondent denying such claims would be the very one that Petitioner would be able to challenge by the means of § 2241 petition.

b.  However, since this particular decision of Respondent would present a determination qualitatively different from that addressed by this Court in 2005, Petitioner would be obligated -- pursuant to Habeas Rule 2(e) -- to submit a separate application challenging this particular determination. See Habeas Rule 2(e). Petitioner, however, conflated such hypothetically-possible petition with his instant Rule 60 motion.

c.  Since the application at hand does not clarify whether Petitioner has such non-speculative and duly exhausted challenges different from those dismissed by this Court in 2005, this Court -- out of abundance of caution -- will direct the Clerk to open a new and separate § 2241 matter for Petitioner to allow Petitioner a meaningful opportunity to present such challenges by means of filing an amended petition. The Court reminds Petitioner that, in the event Petitioner elects to file such amended petition, Petitioner would be required to submit his filing fee of $5.00 or his in forma pauperis application, and Petitioner can neither recite the challenges already dismissed by this Court nor assert challenges based on non-enacted provisions.

9.  Finally, the Court takes notice of Petitioner's vaguely stated claims suggesting denial of medical care or asserting conditions of confinement that incorporate a diet which causes malnutrition. These challenges are deficient for two reasons, one related to this Court's lack of habeas jurisdiction to address these challenges, and another related to Petitioner's lack of standing to sue on behalf of inmates other than himself. Specifically:

a.     Federal law provides two avenues of relief to prisoners: a petition for habeas

corpus and a civil rights complaint.  See Muhammad v. Close, 540 U.S. 749, 750

(2004).  "Challenges to the validity of any confinement or to particulars affecting

its duration are the province of habeas corpus . . . [while] requests for relief

turning on circumstances of confinement [fall within the realm of] a § 1983

action."[1]  Id.  As § 1983 action applies only to state actions, it is not available to

federal prisoners; the federal counterpart is an action under Bivens alleging

deprivation of a constitutional right.  See Brown v. Philip Morris, Inc., 250 F.3d

789, 801 (3d Cir. 2001) ("A Bivens action . . . is the federal equivalent of the §

1983 cause of action against state actors, [it] will lie where the defendant has

violated the plaintiff's rights under color of federal law").  The Court of Appeals

explained the distinction between the availability of civil rights relief and the

availability of habeas relief as follows:

> [W]henever the challenge ultimately attacks the "core of habeas" -
> the validity of the continued conviction or the fact or length of the
> sentence - a challenge, however denominated and regardless of the
> relief sought, must be brought by way of a habeas corpus petition.
> Conversely, when the challenge is to a condition of confinement
> such that a finding in plaintiff's favor would not alter his sentence
> or undo his conviction, an action under § 1983 is appropriate.

---

[1]  In a series of cases beginning with Preiser v. Rodriguez, 411 U.S. 475 (1973), the
Supreme Court analyzed the intersection of civil rights and habeas corpus.  In Preiser, state
prisoners who had been deprived of good-conduct-time credits by the New York State
Department of Correctional Services as a result of disciplinary proceedings brought a § 1983
action seeking injunctive relief to compel restoration of the credits, which would have resulted in
their immediate or speedier release.  See id. at 476.  The prisoners did not seek compensatory
damages for the loss of their credits.  See id. at 494.  Assessing the prisoners' challenge, the
Supreme Court held that a prisoner must bring a suit for equitable relief that, effectively,
challenges "the fact or duration of confinement" as a habeas corpus petition.  See id. at 500.

Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002).

Therefore, a prisoner is entitled to a writ of habeas corpus only if he "seek[s] to invalidate the duration of [his] confinement - either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the [government's] custody." Wilkinson v. Dotson, 544 U.S. 74, 81. In contrast, if a judgment in the prisoner's favor would not affect the fact or duration of the prisoner's incarceration, habeas relief is unavailable and a civil complaint is the appropriate form of remedy.[2] See, e.g. Ganim v. Federal Bureau of Prisons, 235 Fed. App'x 882 (3rd Cir. 2007) (holding that district court lacks jurisdiction under § 2241 to entertain prisoner's challenge to his transfer between federal prisons); Bronson v. Demming, 56 Fed. App'x 551, 553-54 (3rd Cir. 2002) (habeas relief was unavailable to inmate seeking release from disciplinary segregation to general population, and district court properly dismissed habeas petition without prejudice to any right to assert claims in properly filed civil rights complaint). Thus, in the event Petitioner wished to raise conditions of confinement claims based on malnutrition or claims of undue denial

---

[2] Unlike habeas actions, civil rights cases filed in forma pauperis require a filing fee collected in a series of installment payments (alternatively, the entire filing fee may be prepaid without invocation of in forma pauperis status.) See 28 U.S.C. § 1915. The filing fee associated with a civil rights complaint is $ 350.00. In addition, if a prisoner has, on three or more occasions while incarcerated, brought an action or appeal in a federal court that was dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from immune defendants, then the prisoner may not bring another action in forma pauperis unless he or she is in imminent danger of serious physical injury. See 28 U.S.C. § 1915(g). Therefore, this Court is reluctant to construe the civil rights language contained in the application at hand as Petitioner's civil complaint and will leave the final choice to Petitioner.

of medical care, he should have done it by means of a civil complaint, since these challenges have no relevance to the fact or duration of Petitioner's confinement.

b.      Moreover, Petitioner's challenges to that effect have to be both factually specific and based on the events connected to Petitioner personally rather than to Petitioner's opinion as to respondent's treatment of the general prison population. Under the "next friend" doctrine, standing is allowed to a third person, so this third person could file and pursue a claim in court on behalf of someone who is unable to do so on his or her own. The doctrine dates back to the English Habeas Corpus Act of 1679 and provides a narrow exception to the "case or controversy" requirement set forth in the Article III of Constitution. See Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990). The Whitmore Court set out two requirements that should be met by the one seeking to qualify for "next friend" standing: ([i]) "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf [he] seeks to litigate" (and it has been further suggested that a "'next friend' must have some significant relationship with the real party in interest"; and ([ii]) "the 'next friend' must provide an adequate explanation--such as inaccessibility, mental incompetence, or other disability--why the real party in interest cannot appear on his own behalf to prosecute the action." Id. at 163-64; see also Gilmore v. Utah, 429 U.S. 1012 (1976) (recognizing the presence of due interest and significant relationship to confer jus tertii standing upon the mother of a prisoner); compare DeVetsco v. Horn, 53 F.3d 24, 27 (3d Cir. 1995) (denying jus tertii standing to the third persons for "failure to sustain their burden of

establishing . . . mental incompetence [or] other disability on the part of [the allegedly injured party]").  The burden is on the "next friend" to justify his status and, thereby, to obtain the jurisdiction of the federal courts.  See Whitmore, 495 U.S. at 164.  Here, Petitioner gives the Court no reason to presume that Petitioner has the required relationship with unspecified inmates or the entire prison population in care of Respondent, nor can this Court reasonably presume that these unspecified inmates (or the entire prison population) are lacking mental capacity to foster their respective claims.

c.     However, this Court cannot ignore the possibility that Petitioner might have wished to bring his own challenges asserting undue denial of medical care or undue conditions of confinement in violation of his constitutional rights, and that he merely reduced his claims to a less-than-artful expressions conflated with his habeas challenges and paraphrased on behalf of the entire prison population. Thus, out of abundance of caution, the Court will direct the Clerk to initiate a new and separate civil rights matter for Petitioner in order to ensure timeliness of Petitioner's claims, if any such claims were intended, and will allow Petitioner a meaningful opportunity to cure the deficiencies of his pleadings by submitting an amended pleading setting forth the specific factual details of his personal civil rights challenges.  The Court reminds Petitioner that, in the event Petitioner elects to file such pleading, Petitioner must accompany that pleading with his in forma pauperis form: such submission would signify Petitioner's understanding that the filing fee would be assessed against him in the event his in forma pauperis

application is granted, and dismissal of his allegations as frivolous, malicious,

raised against immune entities or failing to state a claim upon which relief can be

granted, would result in a "strike." The Court, therefore, urges Petitioner to

consider his litigation strategy carefully and to draft his pleadings (be they of

habeas or civil rights nature) with great care and without hollow rhetoric.[3]

IT IS, therefore, on this ___13th___ day of ____April____, 2010,

ORDERED that the Clerk shall reopen this matter (for the Court's examination of

Petitioner's instant application) by making a new and separate entry on the docket reading

"CIVIL CASE REOPENED"; and it is further

ORDERED that Petitioner's instant application is DENIED; and it is further

ORDERED that, insofar as Petitioner intended to raise habeas challenges other than those

already resolved by this Court in this matter, Petitioner's challenges are dismissed without

prejudice to being raised in a new and separate matter in accordance with Habeas Rule 2(e); and

it is further

---

[3] In addition, the Court reminds Petitioner that exhaustion requirement applies full force
to Bivens civil rights claims. Indeed, no action may be brought by a prisoner with respect to
prison conditions unless the prisoner has exhausted available administrative remedies. See 42
U.S.C. § 1997e(a). Specifically, 42 U.S.C. § 1997e(a) provides: "No action shall be brought with
respect to prison conditions under section 1983 of this title, or any other Federal law, by a
prisoner confined in any jail, prison, or other correctional facility until such administrative
remedies as are available are exhausted." "[T]he ... exhaustion requirement applies to all inmate
suits about prison life, whether they involve general circumstances or particular episodes, and
whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532
(2002) (citation omitted). Although failure to exhaust is an affirmative defense which must be
pled by the defendant, a district court has inherent power to dismiss a complaint which facially
violates this bar to suit. See Ray v. Kertes, 285 F.3d 287, 293 n.5 (3d Cir. 2002); Nyhuis v.
Reno, 204 F.3d 65 (3d Cir. 2000).

ORDERED that, insofar as Petitioner intended to raise civil rights challenges, Petitioner's challenges are dismissed, for lack of jurisdiction, without prejudice to Petitioner's raising these challenges by means of a civil complaint; and it is further

ORDERED that the remaining challenges and applications are denied/dismissed with prejudice; and it is further

ORDERED that the Clerk shall open two new matters for Petitioner; and it is further

ORDERED that, in the first of these two new matters, the Clerk shall designate "EDWARD ABBOTT" as "Petitioner" and "WARDEN OF PETITIONER'S PLACE OF CONFINEMENT" as "Respondent"; and "Cause: 28:2241 Petition for Writ of Habeas Corpus" and "Nature of Suit: 530 Habeas Corpus (General)"; and it is further

ORDERED that, in the second of these two matters, the Clerk shall designate "EDWARD ABBOTT" as "Plaintiff" and "MEDICAL PERSONNEL OF PETITIONER'S PLACE OF CONFINEMENT" as "Defendant"; and "Cause: 42:1983 Prisoner Civil Rights" and "Nature of Suit: 550 Prisoner: Civil Rights"; and it is further

ORDERED that the Clerk shall assign both these newly open matters to the undersigned; and it is further

ORDERED that the Clerk shall docket Petitioner's instant application, docketed in this matter as Docket Entry No. 10, as Petitioner's petition in the newly open habeas matter and also docket it as Petitioner's complaint in the newly open civil rights matter; and it is further

ORDERED that the Clerk shall docket this Memorandum Opinion and Order in the instant matter and in both newly open matters; and it is further

ORDERED that the Clerk shall administratively terminate both newly open matters by making a new and separate entry in each of these matters reading "CIVIL CASE TERMINATED"; and it is further

ORDERED that each of these matters are administratively terminated subject to reopening in the event Petitioner submits his amended pleadings and applicable in forma pauperis application in the respective matter.  Either one (or both) of these Plaintiff's submissions shall be made within 45 days from the date of entry of this Memorandum Opinion and Order.  In the event Petitioner timely submits his amended pleading(s) and his appropriate in forma pauperis application(s) in either (or both) of these matters, the Court will direct the Clerk to reopen the relevant matter and will examine the sufficiency of Petitioner's in forma pauperis application and, if the in forma pauperis status is granted, will address the merits of Petitioner's amended pleadings, deeming these pleadings filed on the date when Petitioner handed the instant application to his prison officials for mailing to this Court and without regard to the period of administrative termination; and it is further

ORDERED that the Clerk shall close this matter by making a new and separate entry on the docket reading "CIVIL CASE CLOSED"; and it is finally

ORDERED that the Clerk shall serve a copy of this Memorandum Opinion and Order upon Petitioner by regular U.S. mail.  The Clerk shall include in such mailing copies of the docket sheets of both newly opened matters (i.e., of the § 2241 habeas matter and of the Bivens action), one blank petition form for litigants seeking to habeas writ pursuant to 28 U.S.C. § 2241, or blank civil complaint, one blank in forma pauperis application for imprisoned litigants seeking

Page 14 of 15

to initiate a habeas matter and one blank in forma pauperis application for imprisoned litigants

seeking to initiate a non-habeas action.

                                            s/Robert B. Kugler
                                            **Robert B. Kugler, U.S.D.J.**